Your Honor, on behalf of Ijaz Ahmed and his family, Kareem Sareen, if it will please this Court, the immigration judge propounded two novel theories in this matter which were adopted by the Board of Immigration Appeals. One was that a military dictatorship, a totalitarian government that suspends its country's constitution and all democratic activities is a material change of the past and an improvement of the general country conditions and vitiates any claims the lead petitioner may have for a well-founded fear of future persecution. The second novel theory propounded by the immigration judge was that a short visit by — Yeah, you only got 10 minutes. Well, the facts over here are my client escaped from Pakistan in 1991, sought sanctuary at the airport when he arrived in the United States, explained to the Immigration Naturalization at that time that he wanted to fight for asylum based on his membership in the People's Party, the Pakistan People's Party, a legal, legitimate political party, and that he and his brothers and family had been persecuted in Pakistan by the Muslim League and by the police, and that is why he fled. He wasn't placed in any proceedings, and then in 1993 he filed an affirmative application for asylum. He wasn't placed in proceedings till 1998 under the new rules that came out under IRA-IRA, and he had his hearing in the year 2000. There was a military dictatorship that came into power in Pakistan in October of 1999, which basically suspended the constitution of the country, and the party that had persecuted him, their elected leader was placed in jail, as was his elected leader's, and all political activities were basically suspended. Counselor, let me ask you a question. Yes, sir. Did the IJ make a credibility finding? No, but we can assume that the IJ assumed all the facts to be true because she stated she accepted them when she said what my client was stating to be true. Okay. She made no adverse credibility findings. She made no adverse credibility findings. So what you're suggesting, then, is we're to take the facts as true as suggested by your client, correct? And assumed by the IJ and the BI. That is correct, Your Honor. Did you waive your past persecution? Not at all, Your Honor. Why? Because I believe he had convincingly shown that he and his family, and he had a political opinion on his family as a social group, were persecuted by the police and the government in Pakistan. Did you appeal the past persecution finding? Yes, Your Honor. To the BIA? Yes, Your Honor. And then to us? Yes, Your Honor. Then what part of your brief talks about that? Of the past persecution, Your Honor? Yes. It's on my first page, Your Honor, in the table of contents, B, did Petitioners prove past persecution pertaining to the lead Petitioner's political opinion, membership, and affiliation with the PPP by unequivocally demonstrating he was singled out for persecution? All right. Then when the IJ, if I'm going to look at past persecution and I'm going to give the IJ all of the deference that I need to, if there's substantive evidence underneath what the IJ determined, why is not this one 22-day trip to Pakistan enough to suggest that there's substantial evidence? Because the one-day trip is just one trip, 22 days, without any individual facts as to what actually will happen if he lives there. The rules and regulations which are attached to my brief clearly indicates you have to take in and see, for example, would he have any chance of any future arrest, as would occur in 1997 when the government came back into power. Didn't his brother go back to Pakistan? Yes, he did. And when his father died in 1997, he didn't go back because he was afraid to go back. And the government that persecuted him came into power. If there are any other questions, I could answer them. I believe that basically the judge's assumption without any legal authority that a military dictatorship is a change for the better defies common sense and should be, and compels this Court to make such a decision. So what should I do in that circumstance? If I find that there was past persecution and that has not been waived, and I find that now we're looking at whether the past persecution is an assumption, I guess, that there will be future persecution, but in effect the government never did get a chance to impose, did they, or to present changed circumstances? I'm saying a military government by itself, the material fact that when it suspends the Constitution and arrests all political activists, speaks for itself. The act speaks for itself that my client will be arrested if he goes back and tries to get involved in any political activity like he did. Were there any changed circumstances presented? All of these facts that I just mentioned were presented. My client stated if he went back, he would be killed. His brother is missing, the brother you just mentioned that went back. He hasn't seen him. He's afraid of the military government. These facts were presented to the immigration judge, Your Honor. We have another problem in that the military government is now gone. There's another government. You're now asking us to take judicial notice, which is correct, and the fact also is that the leader of his party was murdered by the Islamic fundamentalists, as was the course of the People's Party. If you want to send it back for us to address this issue, that would be a fair issue, Your Honor. There's still thousands of individuals dying in that country who are political activists and associated with the PPP, including his leader. If I could just maintain the balance of my time for rebuttal. All right. If there are no other questions. Thank you very much. Good morning. May it please the Court. Nairi Simonian on behalf of the Respondent, Attorney General Michael Mukasey. In this case, Petitioner has failed to demonstrate that the record compels a finding that he's eligible for asylum and withholding of removal. I'd like to address. Go ahead, sir. All I was going to say is, and that's mainly, I'm to take the facts as presented by the Petitioner, am I not, in this situation, since there was no credibility finding? That's correct, Your Honor. There was no adverse credibility finding, and you are to take the facts as Petitioner presented them. However, if I may address some of the points that you mentioned before. The government's position is that Petitioner did, in fact, fail to exhaust his administrative remedies with respect to the past persecution claims. Just a little slower. Excuse me, actually. Okay. He did fail to exhaust the past persecution claim. If you look at the record on page 48 to 50, there's no section in the argument section about past persecutions. The government's position is that he did fail to exhaust that. But didn't the BIA issue a Burbano, and from Idaho, I don't know how to say that case. Burbano. And therefore, all issues presented to the IJ are deemed to be to have been presented to the BIA? Correct, Your Honor. But the IJ did not make an affirmative past persecution finding. No, but the issue, the issue is still before the BIA. Correct. That's what we're talking about.  That's correct. Let me ask you this. We have a case that tells us that a brief return to a native country to visit a dying parent does not constitute substantial evidence of lack of fear of persecution. Okay. I can address some of the points in the facts. Do you aware of that case? I'm not. Simone Iacova v. Gonzalez. Here's another one. Caroni v. Gonzalez, 399 Fed, 3rd, 1163. I'm not aware of those specific cases, Your Honor. I know that there are cases in the Ninth Circuit that address a brief return. It's not always evidence of the lack of well-founded fear of persecution. However, looking at the cases, the facts of this case, excuse me, Ahmed testified that he was afraid of returning to Pakistan because the Muslim League was in power. However, he returned in 1995, as the IJ noted, and the Muslim League was not in power for three years during that time. And he went under his own name. He didn't encounter any problems while he was there. And thus, he arguably could have remained there during those three years. As the Court mentioned, his brother also went back and remained there from 1993. And Ahmed testified, why did your brother return? Because in 1993, the People's Party came into power. And that's why he went back. As opposing counsel also did indicate, we should take point that he didn't return in 1997 because the Muslim League was in power. That supports the argument that he could have remained in Pakistan when his own party was in power there. Also, opposing counsel mischaracterizes, in my opinion, the IJ's opinion. The IJ never indicated, she never said that the improvement, there was an improvement in country conditions because there was a totalitarian government. In fact, in her decision on the record on page 137, she acknowledged it. A lot of that, you know, it goes on in those countries. I've never been there. But I can imagine in places like that where there's a lot of turmoil and back and forth that a person can go back and I don't know what the process is at the airport. I don't know how their records are kept or their computers operate. But a person can go back to a country like that where there's a lot of, you know, it's not really as modern as maybe we'd like it to be and not get detected and then get out. So, you know, here's a case here where a person, Kharoni, in 1992 and 1996 had returned visits to Lebanon lasting only about two months and one month respectively. And he went there because his parents were dying. And then we said, faced with a difficult choice of returning to Lebanon to see his dying parents or remaining in the safe haven of the United States, we do not fault Kharoni for his choice to return to Lebanon to see his parents one last time. Accordingly, we do not believe that, you know, his two return visits to Lebanon constitutes substantial evidence that his fear of persecution was not well founded. And rather the IJ's conclusion to the contrary was personal conjecture about what choice someone in this person's unfortunate position would have made. So we have quite a few cases on that. And the ---- If I may, Your Honor, your point is taken. However, the record doesn't compel a conclusion. There is no record evidence that the current regime in Pakistan will be targeting Petitioner, that he has a risk of persecution because of events from 20 years ago that he was involved with a political party. I mean, I asked the opposing counsel to point to any record evidence. I can point to a few newspaper articles where leaders of the PPP have experienced some problems. There's an article presented about Benazir Bhutto meeting with Hillary Clinton. But there's nothing that can lend support to the fact that Petitioner will be harmed and has a well-founded fear of persecution if he returns. Well, but there's a history in the family, isn't there, here? Past history? Also from events from 20 years ago. 20 years. And by a party which no longer exists. See, you're a young person, 20 years not so long ago. It's like yesterday. It wasn't until 20 years ago that the head of that party was shot or killed, in some manner. Her husband was elected. We don't know what's going on. The problem that I have, counsel, is that if in fact one suggests that the petitioner has credibility and then one reads through the particular record and determines based on the credibility, which generally when they have credibility, the ability to prove past persecution is pretty easy, and reading through this, there's a lot of stuff that may get to past persecution. If one gets to past persecution, then the threat of future persecution is automatic. It comes with it because of the past persecution. So then it's the government's job to come forward, not the petitioner's job. It's the government's job to come forward with changed circumstances, particularize to this particular situation, and suggest that it isn't the same. I couldn't find that in this record. I'd like to go back to the I.J.'s decision. Your point's well taken. The I.J.'s decision is probably not the best well laid out decision. However, our position is that arguably the I.J. was saying that even if Petitioner, in 1991, when he first made his asylum, when he came through and he made his asylum case, and he had a past persecution claim, and she phrased it and waved, that claim was waved when he returned in 1995. But if the case law, as my good colleague has suggested in that case, and as I think the small, and again, I'm an Idaho boy, so how I pronounce this may be way out of it, Smolniakova versus Gonzalez, both of those suggest that just one trip back to see an ailing parent isn't going to deal with that. So if I can't deal with that, and all I've got is past persecution, then I get a presumption of future persecution, and then the government has to come forward, and I can't find the government coming forward with the country conditions that we have in this particular situation as to this particular individual. We can't talk about country conditions from a long time ago or what happened when the PPP was in power or what happened to the country conditions now. So why don't I have to remand and say, hey, the government's got to have a chance to present those? Your Honor, if the burden, if you believe the burden was incorrect, was not correctly shifted to the government, then a remand would be proper to give the government an opportunity to respond. Yeah, but why shouldn't the government do it right in the first place? I'll again emphasize it's the government's position that the burden was never shifted, that there wasn't an affirmative past persecution finding, and that it was based on the well-founded theory of persecution. Okay, well, you had a nice trip from Washington to come out here. This is actually my hometown, but thank you. You live here? Yeah, my hometown before, but now I'm in D.C. Okay. Do you have any other questions? I think we're all set. Thank you very much. Thank you much. Mr. Sarian, you don't have to say anything. Thank you very much, Your Honor. Okay. All right, now let's go to the next one. Thank you. Thank you, counsel, very much for your argument. All right, we'll take Navarro-Soki v. Mukasey. Is that filed? It was filed? When was it filed? Today. Oh, so we'll hold off on that one, huh? You might come forward, counsel. We have an opinion to give you. Oh, he does. As I understand it, Judge Pregerson, you're going to put this case off to the end of the calendar so that you'll have a chance to review this opinion before you argue? It's an opinion that came out today. You can hold it. You see, it's still warm. All right, number two, Katania Bezovskaya v. Mukasey. That's been submitted. And then,
judges: Pregerson, Hall, N.R. Smith